ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ILIA CAMPOS, ELI FIGUEROA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelada<br><br>v.<br><br>HOSPITAL CRISTO REDENTOR, UNIVERSAL INSURANCE COMPANY ETC.<br><br>Apelante<br><br>ILIA CAMPOS, ELI FIGUEROA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelada<br><br>v.<br><br>HOSPITAL CRISTO REDENTOR, UNIVERSAL INSURANCE COMPANY ETC.<br><br>Apelante | **TA2025AP00113**<br><br><br><br><br><br>**CONS.**<br><br><br><br><br><br>**TA2025AP00191** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Guayama<br><br>Civil Núm. G DP2009-0107<br><br>Sobre: Daños y Perjuicios caída<br><br><br><br>*Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Guayama<br><br>Civil Núm. G DP2009-0107<br><br>Sobre: Daños y Perjuicios caída |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2025.

Comparece ante este foro, Ilia Campos Santiago (señora Campos), Elí Figueroa (señor Figueroa) y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, matrimonio Figueroa-Campos) mediante un recurso de apelación identificado con el núm. TA2025AP00113 presentado el 11 de julio de 2025. Por su parte, el 31 de julio de 2025, compareció el Hospital

Cristo Redentor, Inc.; National Building Maintenance; y Universal Insurance Company (en adelante, Hospital Cristo Redentor) mediante el recurso de apelación identificado con el núm. TA2025AP00191.

Por estar estrechamente relacionados y en aras de la economía procesal, el 18 de agosto de 2025, mediante *Resolución* ordenamos la consolidación de ambos recursos. Los recursos consolidados solicitan la revisión de una *Sentencia* emitida el 27 de enero de 2022 por el Tribunal de Primera Instancia, Sala de Guayama, notificada el 31 de enero de 2022. Mediante el referido dictamen, el foro primario, declaró *Ha Lugar* la *Demanda de Daños y Perjuicios* presentada por el matrimonio Figueroa-Campos.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

## I.

El 16 de junio de 2009, la señora Campos presentó una *Demanda de Daños y Perjuicios* contra Hospital Cristo Redentor, Inc. y su aseguradora, ACE Insurance.[1] En esta, indicó que, el 31 de mayo de 2006, se encontraba en el Hospital Cristo Redentor debido a sus funciones como "clinical advisor" de Humana Health Plans of Puerto Rico. Explicó que sufrió una caída debido a que el suelo se encontraba mojado y no había ningún rótulo de precaución. Alegó que sufrió múltiples lesiones, por lo cual tendrá que recibir tratamiento médico de por vida. Asimismo, indicó que ha desarrollado una condición emocional que está siendo tratada por psiquiatras.

---

[1] *Demanda de Daños Y Perjuicios*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Sostuvo que, el 22 de octubre de 2008, recibió una notificación de cesantía de su patrono por haber expirado el término para garantizarle su posición y se acogió a los beneficios del seguro social por incapacidad. Indicó que el Hospital Cristo Redentor tiene jurisdicción, control, y mantenimiento del área donde ocurrió el accidente. Además, alegó que el accidente se debió a la negligencia del Hospital Cristo Redentor y sus empleados o agentes, quienes responden solidariamente por los daños sufridos. Ante tales circunstancias, solicitó del foro primario que declarara Ha Lugar la *Demanda* y, en su consecuencia, ordenara al Hospital Cristo Redentor a satisfacer las cantidades reclamadas por concepto de daños y perjuicios.

El 28 de octubre de 2009, el Hospital Cristo Redentor presentó su *Contestación a Demanda*.[2] En esencia, negó en gran parte las alegaciones presentadas en la *Demanda* y levantó sus defensas afirmativas. Sostuvo que la causa de acción está prescrita, toda vez que los hechos que dieron base a la *Demanda* ocurrieron el 31 de mayo de 2006. Asimismo, adujo que los empleados de mantenimiento son empleados de una compañía subcontratada. Indicó que en el caso existía ausencia de partes indispensables sin cuya presencia no se podía adjudicar en sus méritos.

No obstante, el 30 de octubre de 2009, la señora Campos presentó una *Demanda Enmendada* mediante la cual incluyó en el pleito a Real Legacy Assurance.[3] Sostuvo que Real Legacy Assurance es la compañía aseguradora del Hospital Cristo Redentor. Ante tales circunstancias, se

---

[2] *Contestación a Demanda*, entrada núm. 4 en SUMAC.
[3] *Demanda Enmendada*, entrada núm. 5 en SUMAC.

removió a Ace Insurance del pleito. En respuesta, el 30 de noviembre de 2009, el Hospital Cristo Redentor presentó su *Contestación a Demanda Enmendada* mediante la cual reafirmó sus defensas afirmativas.[4]

Posteriormente, el 3 de diciembre de 2009, la señora Campos presentó una *Segunda Demanda Enmendada.*[5] En esta, se incluyó como demandados a National Building Maintenance, compañía que realizaba los trabajos de mantenimiento y limpieza en el Hospital Cristo Redentor y, su compañía aseguradora, Universal Insurance Company. Asimismo, la señora Campos argumentó que el accidente fue causado por la negligencia de todos los demandados quienes responden solidariamente por los daños sufridos.

El 5 de marzo de 2010, compareció National Building Maintenance y Universal Insurance Company mediante una *Contestación a Segunda Demanda Enmendada*.[6] En esta, negaron en gran parte las alegaciones presentadas en la *Demanda* y levantaron sus defensas afirmativas. Además, Universal Insurance Company indicó que su responsabilidad está limitada por las cláusulas y condiciones de la póliza de seguros.

Luego de varios tramites procesales, el 27 de enero de 2022, el foro primario dictó *Sentencia* mediante la cual declaró *Ha Lugar* la *Demanda de Daños y Perjuicios* presentada por el matrimonio Figueroa-Campos.[7] Mediante el referido dictamen, el foro primario dispuso que la caída de la señora Campos fue ocasionada por la actuación negligente del Hospital Cristo Redentor. En su consecuencia, condenó al Hospital Cristo Redentor al

---

[4] *Contestación a Demanda*, entrada núm. 6 en SUMAC.
[5] *Segunda Demanda Enmendada*, entrada núm. 7 en SUMAC.
[6] *Contestación a Segunda Demanda Enmendada*, entrada núm. 8 en SUMAC.
[7] *Sentencia,* entrada núm. 2 en SUMAC.

pago de cuarenta y ocho mil cinto cuarenta y ocho dólares con catorce centavos ($48,148.14) a favor de la señora Campos por concepto de angustias mentales y daños físicos. Asimismo, ordenó el pago de diecisiete mil cuatrocientos setenta dólares con sesenta y un centavos ($17,470.61) a favor del señor Figueroa por concepto de angustias y sufrimientos mentales. Además, condenó al Hospital Cristo Redentor al pago de intereses al 4.25% a favor del matrimonio Figuera-Campos.

Inconforme, el 15 de febrero de 2022, el Hospital Cristo Redentor presentó una *Moción de Reconsideración de Sentencia de 27 de enero de 2022, Notificada el 31 de enero*.[8] En esta, sostuvo que el señor Figueroa desistió de su reclamación en corte abierta durante el juicio. Asimismo, indicó que el señor Figueroa tampoco declaró durante la vista en su fondo. Ante tales circunstancias, solicitó la reconsideración de la *Sentencia* a los fines de que se atempere la misma a lo antes indicado y se deje sin efecto los daños otorgados al señor Figueroa.

Por su parte, el mismo día, el matrimonio Figueroa-Campos presentó *Moción Solicitando se Enmienden las Determinaciones de Hecho y se Incluyan Determinaciones de Hecho y Derecho Adicionales y Reconsideración*.[9] Mediante esta, sostuvo que el foro primario erró en cuanto a la apreciación de la prueba admitida en el juicio y en la valoración de los daños sufridos. Señaló que la suma concedida en concepto de daños físicos y angustias mentales es ridículamente baja. En respuesta, el 31 de mayo de 2023, el foro primario emitió una

---

[8] *Moción de Reconsideración de Sentencia de 27 de enero de 2022, Notificada el 31 de enero*, entrada núm. 12 en SUMAC.
[9] *Moción Solicitando se Enmienden las Determinaciones de Hecho y se Incluyan Determinaciones de Hecho y Derecho Adicionales y Reconsideración,* entrada núm. 14 en SUMAC.

*Resolución* mediante la cual declaró *No Ha Lugar* la *Moción Solicitando se Enmienden las Determinaciones de Hecho y se Incluyan Determinaciones de Hecho y Derecho Adicionales y Reconsideración* presentada por el matrimonio Figueroa Campos.[10]

Luego de varios trámites procesales, el 30 de junio de 2025, el foro primario emitió una *Resolución* atendiendo la *Moción de Reconsideración de Sentencia de 27 de enero de 2022, Notificada el 31 de enero,* presentada por el Hospital Cristo Redentor el 15 de febrero de 2022.[11] Mediante esta, dispuso que la cuantía otorgada no fue exageradamente alta, por lo que se debe dar deferencia a las determinaciones y adjudicaciones establecidas en cuanto a los daños emocionales del señor Figueroa.

Inconforme con la *Sentencia*, el 11 de julio de 2025, el matrimonio Figuera-Campos presentó la apelación TA2025AP00113 ante nos y señaló la comisión de los siguientes errores:

> Erró el TPI al no realizar un análisis jurisprudencial comparativo y no valorar todos los daños físicos y emocionales de la [a]pelante que se desprenden de las mismas [d]eterminaciones de [h]echo de la Sentencia, según estableció nuestro más alto foro.

> Erró el TPI al no tomar en consideración las "circunstancias particulares del caso" de la [a]pelante para valorar el daño sufrido en su rodilla, según establece el Tribunal Supremo en Sucs. Mena v. Jiménez Meléndez, 2023 TSPR 108, lo cual resultó en una compensación que resulta ridículamente baja a la luz de las mismas determinaciones de hecho enumeradas por el TPI en la Sentencia.

> Erró el TPI al no analizar, valorar y compensar justa y separadamente las angustias mentales de la [a]pelante que incluyen un diagnóstico de depresión mayor

---

[10] *Resolución*, entrada núm. 15 en SUMAC.
[11] *Resolución*, entrada núm. 24 en SUMAC.

relacionado, una hospitalización psiquiátrica reconocida en la Sentencia e intento de suicidio reconocido en la Resolución del 1 de julio de 2025.

Erró el Honorable TPI, al no tomar en consideración para efectos de valoración los porcientos de impedimento resultantes de las lesiones que fueron relacionadas a la caída [de] la demandante.

Erró el TPI al no concederle a la [a]pelante una compensación por concepto de lucro cesante a pesar de que reconoce en la Sentencia que, a consecuencia de la caída, la demandante estuvo fuera de su empleo con Humana mientras recibía tratamiento médico por el FSE y eventualmente perdió su empleo por haber expirado el término que por ley tenía para reintegrarse al mismo.

De igual forma, el 31 de julio de 2025, el Hospital Cristo Redentor instó la apelación TA2025AP00191 ante nos y señaló los siguientes errores:

Erró el Tribunal de Primera Instancia al conceder compensación en la cantidad de $17,470.61 al codemandante Elí Figueroa en concepto de sufrimientos y angustias mentales a[ú]n cuando éste no declaró en momento alguno durante el juicio.
Erró el Tribunal de Primera Instancia al conceder compensación en la cantidad de $17,470.61 al codemandante Elí Figuera en concepto de sufrimientos y angustias mentales a[ú]n cuando la causa de acción de éste estaba prescrita.

Así las cosas, el 14 de julio de 2025 emitimos una *Resolución* concediendo a al matrimonio Figueroa-Campos el término dispuesto en el Reglamento de este Tribunal, 4 LPRA Ap. XXII-B, para presentar su alegato. De igual forma, el 7 de agosto de 2025 emitimos una Resolución concediendo prórroga para que el Hospital Cristo Redentor presentara su alegato.

El 15 de agosto de 2025, el matrimonio Figueroa-Campos presentó un *Alegato de la Parte Apelada*. Por su parte el 18 de agosto de 2025, el Hospital Cristo Redentor presentó un *Alegato de Apelada*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso.

**II.**

**-A-**

Nuestro ordenamiento jurídico reconoce el derecho que tiene todo individuo para reclamar cualquier daño o perjuicio sufrido a raíz de la consecución de actos culposos o negligentes de un tercero. En lo pertinente, el Artículo 1536 del Código Civil de Puerto Rico de 2020, establece que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801.

A su vez, el Tribunal Supremo ha resuelto que una parte demandante que inste una reclamación por daños y perjuicios bajo el Artículo 1536 del Código Civil, *supra*, debe establecer: "(1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente". *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 768 (2023).

Por otra parte, el Artículo 1204(a) del Código Civil, *supra*, dispone que prescriben: (a) por el transcurso de un (1) año, la reclamación para exigir responsabilidad extracontractual, contado desde que la persona agraviada conoce la existencia del daño y quien lo causó". 31 LPRA sec. 9496. El propósito del término prescriptivo es fomentar la rapidez de las reclamaciones y castigar la dejadez. *COSSEC et al. v. González López et al.*, 179 DPR 793, 806 (2010).

Es meritorio señalar que el Artículo 1204(a) del Código Civil, *supra*, es cónsono con la teoría de cognoscitiva del daño, destacada por la jurisprudencia. Según la teoría cognoscitiva del daño, el término prescriptivo empieza transcurrir cuando el perjudicado "conoció —o debió conocer— que sufrió un daño, quién se lo causó, así como los elementos necesarios para ejercitar efectivamente su causa de acción". *Maldonado Rivera v. Suárez y otros*, 195 DPR 182, 194 (2016). A estos efectos, el máximo foro reconoce un elemento subjetivo que está relacionado con la diligencia del perjudicado para determinar en qué momento empieza a transcurrir el término prescriptivo. *Fraguada v. Hosp. Aux. Mutuo*, 186 DPR 365, 390 (2012); *COSSEC et al. v. González López et al.*, supra.

-B-

En reiteradas ocasiones, el Tribunal Supremo ha expresado que, en las acciones de daños y perjuicios, la estimación y valoración de daños es una tarea difícil y angustiosa, dado que "no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas". *Santiago Montañez et al. v. Fresenius Medical et al.*, 195 DPR 476, 490 (2016); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 909 (2012); *Herrera, Rivera v. SLG Ramírez Vicéns*, 179 DPR 774, 784 (2010).

Por tal razón, los tribunales apelativos deben guardar deferencia a las valorizaciones de daños que realizan los foros de primera instancia, debido a que estos son los que tienen contacto directo con la prueba testifical y están en mejor posición para emitir un

dictamen. *Rodríguez et al. v. Hospital et al.*, supra, pág. 909. Ahora bien, los tribunales apelativos intervendrán con las estimaciones de daños realizadas por el Tribunal de Primera Instancia cuando la cuantía concedida sea exageradamente alta o ridículamente baja. Íd. Véase, además, *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra; *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 509-510 (2009).

Por otro lado, el ejercicio de la valoración de daños conlleva cierto grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Santiago Montañez et al. v. Fresenius Medical et al.*, supra; *Herrera, Rivera v. SLG Ramírez Vicéns*, supra. Además, no existen dos casos idénticos, debido a que cada uno tiene sus circunstancias particulares. Por tanto, al comparar las cuantías concedidas en casos previos, hay que ajustarlas al valor presente. *Santiago Montañez et al. v. Fresenius Medical et al.*, supra; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013); *Rodríguez et al. v. Hospital et al.*, supra; *Herrera, Rivera v. SLG Ramírez Vicéns*, supra.

En *Santiago Montañez v. Fresenius Medical*, supra, el Tribunal Supremo advirtió a los jueces del Tribunal de Primera Instancia respecto a la importancia de detallar específicamente en los dictámenes los casos similares utilizados como referencia o punto de partida para la estimación y valoración de daños, y el cómputo realizado para establecer las cuantías que se concedan. Esto, debido a que las compensaciones otorgadas en casos previos constituyen un punto de partida y referencia útil para que los tribunales apelativos puedan pasar

juicio sobre las concesiones otorgadas por el foro primario. *Íd.*

-C-

Es norma establecida en nuestra jurisdicción que cualquier hecho en controversia es susceptible de ser demostrado, no tan sólo mediante evidencia directa, sino con evidencia indirecta o circunstancial. Es decir, con aquella evidencia que tienda a demostrar el hecho en controversia probando otro distinto, del cual -en unión a otros hechos ya establecidos— pueda hacerse una inferencia razonable que permita hacer una determinación conclusiva de cuáles son los hechos ciertos del caso. *Colón v. Kmart*, 154 DPR 510 (2001); Regla 10(H) de Evidencia, 32 LPRA Ap. IV; E. Chiesa, *Tratado de Derecho Probatorio*, Tomo II, pág. 1239; *Admor. F.S.E. v. Almacén Román Rosa*, 151 DPR 711 (2000). Cabe señalar que, nuestro Tribunal Supremo ha resuelto que la prueba circunstancial es tan suficiente como la prueba directa para probar cualquier hecho. Admor. F.S.E. v. Almacén Ramón Rosa, 151 DPR 711 (2000); Pueblo v. Castro Cruz, 90 DPR 206 (1964).

-D-

Los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Esta deferencia hacia el foro primario responde al hecho de que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar

la declaración de los testigos. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).

Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Así, como foro apelativo, podemos intervenir con la apreciación de la prueba oral que haga el Tribunal de Primera Instancia, cuando el foro primario actúe con pasión, prejuicio, parcialidad, o incurra en un error manifiesto al aquilatarla. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011); *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

Además, se podrá intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando su apreciación se distancia "de la realidad fáctica o ésta [es] inherentemente imposible o increíble." *González Hernández v. González Hernández*, supra, pág. 777; *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009).

Se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, supra.

## III.

Por estar relacionados, atendemos en conjunto el primer, segundo, tercer, cuarto y quinto señalamiento de error planteado por el matrimonio Figueroa-Campos. En síntesis, el matrimonio Figueroa-Campos alega que el foro primario erró al no valorar todos los daños físicos y emocionales de la señora Campos. Además, arguye que la valoración de los daños resultó en una compensación que resulta ridículamente baja. Por otro lado, sostuvo que erró el foro primario al no concederle a la apelante una compensación por concepto de lucro cesante.

Recordemos que, no existe un sistema de computación ideal que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas con la estimación y valoración de daños. Por tal razón, los tribunales apelativos deben guardar deferencia a las valorizaciones de daños que realizan los foros de primarios, debido a que estos son los que tienen contacto directo con la prueba y están en mejor posición para emitir un dictamen. En el caso ante nuestra consideración, el Tribunal de Primera Instancia detalló específicamente el dictamen utilizado como referencia para la estimación y valoración de daños del matrimonio Figueroa-Campos, así como el cómputo realizado para establecer las cuantías concedidas. No surge que la cuantificación de los daños es irrazonable. Por ello, reiteramos la norma de abstención judicial para intervenir con la apreciación de la prueba que hizo el foro primario en ausencia de pasión, prejuicio, error manifiesto o parcialidad.

A continuación, procedemos con la discusión de los dos señalamientos de error planteados por el Hospital Cristo Redentor en su recurso de apelación. En esencia, sostuvo que erró el foro primario al conceder compensación en la cantidad de $17,470.61 al señor Figueroa, toda vez que este no declaró durante el juicio y su causa de acción estaba prescrita. Específicamente, alega que el foro primario concedió un remedio improcedente al señor Figueroa ya que este no presentó prueba sobre sus sufrimientos y angustias mentales, toda vez que no declaró durante el juicio. Asimismo, arguyó que, al no haber declarado durante el juicio, el señor Figueroa tampoco presentó prueba sobre haber interrumpido el término de un (1) año para presentar su causa de acción, por lo que la misma esta prescrita.

Conforme discutimos, todo individuo tiene derecho para reclamar cualquier daño o perjuicio sufrido a raíz de la consecución de actos culposos o negligentes de un tercero. A su vez, el Artículo 1204(a) del Código Civil, *supra*, dispone que la reclamación para exigir responsabilidad extracontractual prescribe por el transcurso de un (1) año, contado desde que la persona agraviada conoce la existencia del daño y quien lo causó. Es meritorio señalar que el término prescriptivo empieza transcurrir cuando el perjudicado conoció —o debió conocer— que sufrió un daño, quién se lo causó, así como los elementos necesarios para ejercitar efectivamente su causa de acción.

En el caso de autos, la *Demanda* fue presentada el 16 de junio de 2009 contra del Hospital Cristo Redentor. Posteriormente, el matrimonio Figueroa-Campos advino en conocimiento de que los empleados de mantenimiento son

empleados de National Building Maintenance, una compañía subcontratada por el Hospital Cristo Redentor. Desde ese momento es que el matrimonio Figueroa-Campos conoce todos los elementos necesarios para ejercitar su acción contra el Hospital Cristo Redentor, cónsono con la teoría cognoscitiva del daño. Dicha información le era desconocida al matrimonio Figuera-Campos, por lo que presentó una *Segunda Demanda Enmendada* para traer al pleito a la compañía antes mencionada y a su compañía aseguradora, Universal Insurance Company. Ante tales circunstancias, carece de mérito el argumento sobre prescripción.

Por otro lado, entendemos que el foro primario no incidió al conceder compensación en la cantidad de $17,470.61 al señor Figueroa en concepto de sufrimientos y angustias mentales aun cuando éste no declaró en el juicio. Conforme discutimos, cualquier hecho en controversia es susceptible de ser demostrado, no tan sólo mediante evidencia directa, sino con evidencia indirecta o circunstancial. Además, los tribunales apelativos no debemos intervenir con la apreciación de la prueba del foro primario. Esto se debe a que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada y escuchar la declaración de los testigos. En el caso ante nos, los daños del señor Figueroa fueron determinados de conformidad con los testimonios vertidos durante la vista y la prueba documental admitida en evidencia. Luego de examinar el expediente ante nuestra consideración, colegimos que la apreciación de la prueba del foro primario no se distancia de la realidad fáctica ni es inherentemente imposible o increíble. Por

consiguiente, el proceder del foro primario merece deferencia pues, según antes detallado, salvo que exista pasión, perjuicio, parcialidad o error manifiesto, los foros revisores no debemos intervenir con la apreciación de la prueba del foro de origen.

Por ello, tras un análisis de las alegaciones formuladas por las partes y a la luz de la totalidad de las circunstancias, consideramos que el foro primario no incurrió los señalamientos de error planteados por las partes.

**IV.**

Por los fundamentos que anteceden, **CONFIRMAMOS** la *Sentencia* emitida el 27 de enero de 2022.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones